FILED

2009 Dec-18  PM 02:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CRYSTAL D. FREEMAN, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | CV-08-AR-1584-S |
| | } | |
| WAL-MART STORES EAST, L.P., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Crystal D. Freeman ("Freeman") sues Wal-Mart Stores East, L.P. ("Wal-Mart"), her former employer, claiming that it committed multiple violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and the Alabama common law torts of outrage and intentional infliction of emotional distress. Before the court is Wal-Mart's motion for summary judgment. For the reasons stated below, Wal-Mart's motion will be granted in most respects but denied in one particular.

**FACTS[1]**

Freeman began working at Wal-Mart on September 20, 2001 as a

---

[1]    The court takes as true the facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). The complaint's allegations must plausibly suggest a right to relief, raising that right "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 999 (11th Cir. 1992).

Deli Sales Associate for Store #3271 in Calera, Alabama. At the time she was hired, she received Wal-Mart's Associate Handbook, which includes information regarding Wal-Mart's discipline program, called the Coaching for Improvement Policy ("the Improvement Policy"). Under the Improvement Policy, the first level of discipline is a Verbal Coaching. A Verbal Coaching is active for one year from the date it is issued. The second level of discipline is a Written Coaching, which also remains active for one year from the date it is issued. The third level of discipline under the Improvement Policy, and the last step prior to termination, is a Decision-Making Day. Any misconduct within a year of the date of a Decision-Making Day subjects an Associate to immediate termination. Wal-Mart also has a Breaks, Meal Periods, and Days of Rest Policy ("the Break Policy"), which provides that Associates working more than six hours are entitled to two paid fifteen minute breaks and one unpaid thirty minute meal period per shift.

In June 2005, Freeman requested and received a transfer to Store #423, which was opening in Alabaster, Alabama. In December 2005, Freeman was promoted to Candy Department Manager, an hourly pay-grade six (6) position. On March 8, 2006 Freeman received a Verbal Coaching from her manager, Jamie Dennis ("Dennis"), for failing to meet productivity standards. One week later, on March 15, 2006, Freeman received a Written Coaching for violation of the Break Policy. According to the Written Coaching, Freeman took a

2

thirty-two (32) minute break, instead of the fifteen (15) minute break allowed under the Break Policy. (Freeman Dep. Ex. 7).

On April 3, 2006, Freeman visited Dr. James E. Lyle ("Dr. Lyle") for a pregnancy test. Freeman explained to Dr. Lyle that the week before her visit she had a positive pregnancy test. Dr. Lyle gave Freeman a pregnancy test, which confirmed that she was pregnant. On April 4, 2006 Freeman submitted a doctor's note to Wal-Mart store managers Dennis and Keith Becton ("Becton"). The note stated that Freeman should not lift over thirty (30) pounds during her pregnancy. In late July 2006, Freeman suffered a miscarriage and took a two week leave of absence for medical treatment. At the conclusion of her leave, Freeman returned to her position as Candy Department Manager.

In September or October of 2006 Freeman found out that she was again pregnant, and informed Co-Manager Rod Hill ("Hill") and Assistant Manager David Stoessel ("Stoessel") of that fact. In January 2007, Wal-Mart was accepting applications for the Assistant Manager Training Program ("MTP"). Freeman applied for the MTP in January 2007, but was denied an interview for the program.

On February 7, 2007, Freeman was called into a meeting with Stoessel and Co-Manager Gigi Dendy ("Dendy") to discuss a new alleged violation of the Break Policy. Dendy told Freeman that she was going to suspend Freeman until Becton returned from an out-of-town meeting. On February 10, 2007, Freeman met with Becton, Dendy

and Stoessel to discuss the February 7, 2007 incident. Becton informed Freeman that she would receive a Decision-Making Day for the incident, and further informed Freeman that according to Wal-Mart policy, she would be taken out of the Candy Department Manager position. After taking her Decision-Making Day, in accordance with the Improvement Policy, Freeman met with Becton, Dendy, and Barbara Garrett ("Garrett") on February 13, 2007 to discuss Freeman's future with Wal-Mart. Becton discussed with Freeman several open positions at lower pay grades. Shortly after the meeting, Freeman came to Becton and told him she was spotting and needed to go to the doctor immediately, and Becton gave her permission to leave. Freeman returned to the store later that day with a completed leave of absence request. Wal-Mart immediately granted her request for a leave. At the time Freeman took her leave of absence she had neither accepted nor rejected management's offer to allow her to return at a lower pay grade position.

Freeman gave birth to her child on June 15, 2007. Sometime in early August 2007, she went back to her doctor for her six-week follow-up appointment, and she was cleared to return to work. On or about August 20, 2007, she returned to the store and met with Stoessel and Becton. In her interview, Freeman told Stoessel and Becton that she would not be willing to return to Wal-Mart at any of the positions being offered. Freeman signed an exit interview form, and did not return to Wal-Mart. On August 9, 2007, she filed

a complaint with the EEOC alleging a violation of the PDA. On June 4, 2008, the EEOC dismissed Freeman's complaint and issued a right-to-sue. The dismissal stated, *inter alia*: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Freeman Dep. Ex. 19). After receiving her EEOC dismissal and notice of rights, Freeman initiated this action.

## ANALYSIS

Title VII prohibits employers from discriminating against an individual "because of sex." 42 U.S.C. 2000e-2(a) (2003). In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act ("PDA"), which provides that discrimination "because of sex" includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. 2000e(k) (2003). The PDA does not require any special treatment for pregnant women. It simply outlaws discrimination based on pregnancy. *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000)("the PDA does not require favorable treatment."). Thus, "[t]he analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Id.* at 1321.

Freeman claims that Wal-Mart subjected her to disparate treatment on the basis of her pregnancy. (Compl. ¶ 36). To succeed on a claim of disparate treatment under Title VII, a plaintiff must offer evidence of the employer's discriminatory intent. *Spivey v.*

*Beverly Enterprises, Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999). The evidence offered concerning an employer's discriminatory intent may be direct or circumstantial. When a Title VII claim is based on circumstantial evidence of discriminatory intent, the court evaluates the claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, Freeman "is required to first establish a prima facie case that creates a rebuttable presumption of unlawful discrimination." *Spivey*, 196 F.3d at 1312.  To establish her *prima facie* case, Freeman must show: (1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules. *Id.* In attempting to show a differential application of rules to satisfy factor four (4), "a plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy" in taking the adverse employment action. *Armindo*, 209 F.3d at 1321 (citing *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994)).

"If a plaintiff establishes a prima facie case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment

6

action." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Id.* at 1037. Also, in order to defeat summary judgment, the evidence concerning pretext must have some basis in the record, and cannot be based solely on the plaintiff's "own self-serving statements." *Smith v. Federal Express Corp.*, 191 Fed. Appx. 852, 855 (11th Cir. 2006)(citing *Ellis v. England*, 432 F.3d 1231, 1236 (11th Cir. 2005)).

**Freeman's Allegations of Extra Work and Dangerous Lifting Assignments**

Freeman first complains that "she was assigned lifting assignments that were dangerous for her that similarly situated employees were not assigned." (Pl.'s Br. in Opp'n at 10). In support of this alleged PDA violation, Freeman cites only her own deposition testimony, in which she claims that management required her to stack more pallets than non-pregnant employees, made her run other departments along with her own, and that management was always "riding her." She specifically complains about stacking pallets sometime in early March, 2006, an incident for which she received a Verbal Coaching. (Freeman Dep. at 80-83 and Ex. 6). The

7

Verbal Coaching occurred on March 8, 2006, and was related to management's belief that Freeman had not met her productivity standards in terms of pallet stacking. (Freeman Dep. Ex. 6). Freeman cannot claim a discriminatory motive for this alleged extra work or the accompanying Verbal Coaching because she did not notify Wal-Mart of her pregnancy until April 4, 2006, well **after** the alleged discriminatory actions took place. Wal-Mart could not have discriminated against Freeman based on her pregnancy when it did not know she was pregnant.

While Freeman does make other vague assertions that "as soon as I told them that I was pregnant, then they put more work on me as far as pulling extra pallets on the floor," she contradicts her own testimony when she states that management "ma[de] me work other departments and pull[] extra pallets and restack[] pallets and do[] all this extra stuff **until I told [assistant manager] Billy [Hayes] that I was pregnant.**" (Freeman Dep. at 51)(emphasis added). Freeman readily admits that after announcing her pregnancy, Wal-Mart never requested that she pull any pallets over thirty (30) pounds. (Freeman Dep. at 48) Thus, Freeman cannot logically expect anyone, including this court, to recognize a claim that she was required to take on "dangerous lifting assignments" just because she was pregnant. Freeman does not provide any evidence of similarly situated employees, pregnant or not, who were not required to perform the tasks that she complains about, and she points to no

alleged violation by Wal-Mart of its policies, even if it did ask her to perform certain tasks. Employees are there to perform tasks. Furthermore, the only specific task Freeman complains about occurred prior to Wal-Mart's knowledge of her pregnancy, and therefore cannot be a manifestation of the discriminatory intent that is proscribed by the PDA. Vague assertions that management was "riding her" and making her "do extra stuff" cannot, as a matter of law, support a claim for pregnancy discrimination. Therefore, Freeman cannot establish a *prima facie* case of discrimination based on alleged extra work assigned to her.

**Freeman's Allegations of Discriminatory Discipline**

Freeman also claims that "she was disciplined under harsher standards than those for non-pregnant employees." (Pl.'s Br. in Opp'n at 11). Presumably, Freeman is complaining about her Verbal Coaching, Written Coaching, and Decision-Making Day. Because both the Verbal Coaching and Written Coaching occurred **before** Wal-Mart discovered that Freeman was pregnant, there could be no discriminatory intent on the part of Wal-Mart when the incidents occurred. Therefore, the only discipline Freeman can complain about is the Decision-Making Day ordered on February 10, 2007.

The Decision-Making Day was related to the incident which took place on February 7, 2007, in which Freeman clocked in after taking her lunch break, but returned to the break room for at least a small period of time. Freeman claims that she was feeling

9

lightheaded and ill, and went to rest in the break room.  It is undisputed that Wal-Mart's written Break Policy does not allow an employee to take a paid break immediately following a meal period without notifying management. (Freeman Dep. Ex. 9).  Freeman claims that her conduct was nonetheless permissible because a Co-Manager, Rod Hill, had previously told her that if she was feeling ill and could not immediately find a manager, she could go to the break room and rest, and therefore that subjecting her to discipline for taking the break establishes a *prima facie* case of discrimination. (Freeman Dep. at 76); (Pl.'s Br. in Opp'n at 12). Again, Freeman offers no evidence that other, non-pregnant employees took such on-the-clock breaks without permission from management and were not subjected to the same discipline. In fact, Freeman received her Written Coaching, which occurred before Wal-Mart had knowledge of her pregnancy, for a similar violation of the Break Policy. (Freeman Dep. Ex. 7). Thus, the evidence shows not only that Freeman was not treated differently from non-pregnant employees, but that non-pregnant Freeman was treated in exactly the same manner as pregnant Freeman. Freeman cannot claim that she was entitled to an exception from Wal-Mart policy because of her pregnancy, as the PDA does not require special treatment of pregnant women. *See Armindo*, 209 F.3d at 1320.

However, Freeman can still establish a *prima facie* case of discrimination if she can show that Wal-Mart violated its own

policy when it disciplined her for the February 7, 2007 incident. In support of such an assertion, Freeman claims that she had been given oral permission to deviate from the written Break Policy, and that her claim is supported by the testimony of Wal-Mart managers. (Pl.'s Br. in Opp'n at 12). However, Freeman mischaracterizes the deposition testimony. No manager testified that he or she gave Freeman blanket permission to take breaks without a prior request for permission from management. In response to hypothetical questions concerning whether an employee might be able to take such breaks if she was feeling ill or lightheaded, the Wal-Mart managers testified that such a break **might** be permissible **if** the employee had previously been given permission to do so. *See* Becton Dep. at 19-20; Hill Dep. at 46 ("if she had permission to do so, then, yes, she would have been right."). The otherwise unsupported assertion that Freeman had been given oral permission to deviate from the break policy does not establish a *prima facie* case of discrimination.

Assuming *arguendo* that Freeman has established a *prima facie* case of discrimination based on the Decision-Making Day, her claim would still fail. Wal-Mart has offered a legitimate, non-discriminatory reason for issuing the Decision-Making Day, namely, violation of the Break Policy, an offense for which Freeman had been disciplined both pre-pregnancy and post-pregnancy. In considering whether Freeman has offered substantial evidence that

Wal-Mart's non-discriminatory reason is pretext, the court must weigh "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2109 Fn. 11 (2000). As discussed above, Freeman presents a weak *prima facie* case of discrimination as to the Decision-Making Day, if she presents one at all. The only "proof" offered in terms of pretext is Freeman's own self-serving statement that she was given oral permission to deviate from the written break policy. Even assuming that Freeman's testimony is correct, weighing this against the undisputed and unambiguous written Break Policy, and the fact that Freeman herself, prior to any knowledge of pregnancy, had been disciplined under the same policy for an almost identical violation, Freeman has not presented sufficient evidence of pretext to survive summary judgment on this contention.

**Freeman's Allegation of Discrimination in Connection with the Assistant Manager Training Program**

Freeman also alleges that Wal-Mart discriminated against her by not considering her for the Assistant Manager Training Program ("MTP") and position that became available in January 2007.  In response, Wal-Mart points out that at the time it was considering applicants for the program and position in question, Freeman had an active Written Coaching, and that per Wal-Mart policy, an employee

with an active Written Coaching is not eligible for an Assistant Manager position. (Aff. of Gery Fuller Ex. 2); (Freeman Dep. at 135). Again, Freeman offers no evidence that another Wal-Mart employee with an active Written Coaching was given such a position or considered for the MTP, or that Wal-Mart deviated from company policy in failing to consider her for the position.

In an attempt to prove Wal-Mart's animus against pregnant women, Freeman claims that the failure to consider her for the MTP and position "is discriminatory on its face ... because the decision to impose the [written] coaching was itself discriminatory." (Pl.'s Br. in Opp'n at 11). As discussed above, the Written Coaching in question occurred **before** Wal-Mart became aware of Freeman's pregnancy. It was therefore impossible for Wal-Mart's decision to issue the Written Coaching to be based on Freeman's pregnancy. Furthermore, Freeman's attempt to bootstrap an earlier alleged discrimination to a completely separate incident is insufficient to prove discriminatory intent. Under the undisputed language of Wal-Mart's employee handbook an employee with an active Written Coaching is **ineligible** for a promotion. A claim that the underlying Written Coaching was intentional discrimination does not relate to the motivations for **this** incident, and, as explained above, the claim that the underlying Written Coaching was pretextual is completely unsupported.

In her final, and only successful, effort to prove pretext,

Freeman, in her deposition, testifies that Wal-Mart Human Resources Manager, Gery Fuller ("Fuller"), told her that she was not being considered for the MTP and position **because** she was pregnant. This claim is conspicuously absent from Freeman's EEOC complaint (Freeman Dep. at 136-38), but it nonetheless constitutes direct evidence of a PDA violation that can only be tested at trial for its credibility. In an affidavit filed by Wal-Mart, Fuller denies having made the statement that Freeman relates (Fuller Aff. ¶7), but this only proves that the competing credibility of the two witnesses must be resolved by a jury and not under Rule 56. It is well established that directly conflicting testimony, if it involves a pertinent disputed fact, precludes summary judgment. It must be weighed by the trier of fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Self-serving testimony can provide direct evidence of discriminatory intent and can be sufficient to establish pretext if the jury believes it. Thus, Freeman's claim on this aspect of her complaint survives summary judgment.

**Freeman's Allegations of Wrongful Termination**

Freeman also alleges "wrongful termination" in connection with her interview conducted on August 20, 2007, and subsequent departure from the company.  Freeman admits that when she returned from her leave of absence, she marked on her exit interview form that she "refused [an] offer to work." (Def.'s Br. in Supp. Ex. J at 44). Her refusal was based on the fact that "a job was not

14

offered that was suitable for me." *Id.* at 40; *See* Freeman Dep. at 121-22). Freeman is referring to the fact that when she returned from her leave of absence to conduct the interview she was offered a position at a lower pay grade than her previous position of Candy Department Manager because of her Decision-Making Day. It is undisputed that Wal-Mart's policy provides that Wal-Mart may demote an employee who receives a Decision-Making Day. (Aff. of Gery Fuller Ex. 2). Freeman offers no evidence that other, non-pregnant employees were treated differently than she was treated, nor does she offer evidence that Wal-Mart violated its policies in offering her a lower pay position. Therefore, Freeman fails to make out a *prima facie* case of discrimination based on Wal-Mart's refusal to offer her the same position after her leave of absence.

Furthermore, assuming *arguendo* that Freeman has established a *prima facie* case on this claim, she offers no evidence to suggest that Wal-Mart's non-discriminatory reason, namely that she was demoted because of her Decision-Making Day, is pretextual. To support a claim of pretext, Freeman points only to the fact that there is conflicting testimony about who changed a mark on her exit interview form from "refused offer to work" to "stay at home". (Pl.'s Br. in Opp'n at 14). This evidence, however, does not relate to Wal-Mart's alleged motivation for not allowing Freeman to return to work in her old position. Furthermore, both the "refused offer to work" box and the "stay at home" box are under the "voluntary

termination" column on the exit interview form. Thus, this disputed testimony cited by Freeman cannot support a claim that Freeman was involuntarily terminated and Wal-Mart later changed the form to make it look like she left voluntarily, and the court cannot allow a jury to accept such an outlandish theory. At her unemployment compensation hearing, Freeman readily admitted that she voluntarily did not return to work because she did not want to accept the lower pay grade positions being offered, and even admitted that in her exit interview that she requested that she be fired because she had a pending lawsuit and was told that "getting fired always was better." (Def.'s Br. in Supp. Ex. J at 56).   Wal-Mart refused Freeman's request that she be fired, and continued to offer to allow her to return at a lower pay grade position.

**Freeman's Allegations of IIED/Outrage**

Finally, Freeman makes state law claims of intentional infliction of emotional distress (IIED) and the tort of outrage. To recover on a claim for outrage or IIED under Alabama law, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Gilmer v. Crestview Memorial Funeral Home, Inc.*, 2009 WL 1875508, at *8 (Ala. 2009).   In support of her IIED/outrage claim, Freeman relies on the same evidence offered in support of her discrimination claims, alleging, *inter alia,* that

Wal-Mart "assigned additional job duties that it did not assign to non-pregnant employees that it reasonably knew would increase the risk that she would suffer a miscarriage," and "subjected the Plaintiff to false accusations of misconduct and punished her more severely than it disciplined other employees." (Pl.'s Br. in Opp'n at 17). Freeman has offered no evidence to support her state law claims. There is no proof that Wal-Mart's conduct was extreme or outrageous.  Freeman's claim for IIED/outrage is unsupported, and therefore cannot survive summary judgment.

## CONCLUSION

Freeman has failed to establish a *prima facie* case for any of the alleged discriminatory actions taken by Wal-Mart, except one. Wal-Mart has offered legitimate non-discriminatory reasons for all of its adverse employment actions taken in relation to Freeman, and Freeman has failed to provide a scintilla of evidence beyond her own belief that Wal-Mart's non-discriminatory reasons are pretextual, except as to the claim based on her assertion that a supervisory employee admitted to her that his motivation in taking an adverse employment action was her pregnancy. Even if Freeman had established a *prima facie* case of discrimination, all claims, except this one, would not survive summary judgment. Freeman's outrage/IIED claim, which is based on the same evidence as her discrimination claims, is without colorable merit.  Based on the foregoing, Wal-Mart's motion for summary judgment will be granted

17

in part and denied in one respect.

DONE this 18th day of December, 2009.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE